CENTER FOR DISABILITY ACCESS
Raymond Ballister Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Amanda Seabock, Esq., SBN 289900
Zachary Best, Esq., SBN 166035
Mail: 8033 Linda Vista Road, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
amandas@potterhandy.com
        Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Orlando Garcia,**<br><br>     Plaintiff,<br><br>**v.**<br><br>**LHO Mission Bay Rosie Resort, L.P.**, a Delaware Limited Partnership; **LHO Mission Bay Rosie Lessee, Inc.**, a Delaware Corporation.<br><br>     Defendants, | **Case No**. 3:20-cv-02370-DMS-MDD<br><br>**First Amended Complaint For Damages And Injunctive Relief For Violations Of:** Americans With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Orlando Garcia complains of LHO Mission Bay Rosie Resort, L.P. and LHO Mission Bay Rosie Lessee, Inc. ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is substantially limited in his ability to walk. He suffers from cerebral palsy. He has the use of only one arm. He uses a wheelchair, walker, or cane for mobility.

2. Defendants own and operate the San Diego Mission Bay Resort located

First Amended Complaint                    3:20-cv-02370-DMS-MDD

at 1775 E. Mission Bay Dr., San Diego, California currently and at all times relevant to this complaint.

3.   Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION:**

4.   The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

5.   Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

6.   Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**PRELIMINARY STATEMENT**

7.   This is a lawsuit challenging the reservation policies and practices of a place of lodging. Plaintiff does not know if any physical or architectural

First Amended Complaint                    3:20-cv-02370-DMS-MDD

barriers exist at the hotel and, therefore, is not claiming that that the hotel has violated any construction-related accessibility standard. Instead, this is about the lack of information provided on the hotel's reservation website that would permit plaintiff to determine if there are rooms that would work for him.

8. After decades of research and findings, Congress found that there was a "serious and pervasive social problem" in America: the "discriminatory effects" of communication barriers to persons with disability. The data was clear and embarrassing. Persons with disabilities were unable to "fully participate in all aspects of society," occupying "an inferior status in our society," often for no other reason than businesses, including hotels and motels, failed to provide information to disabled travelers. Thus, Congress decided "to invoke the sweep of congressional authority" and issue a "national mandate for the elimination of discrimination against individuals with disabilities," and to finally ensure that persons with disabilities have "equality of opportunity, full participation, independent living" and self-sufficiency.

9. As part of that effort, Congress passed detailed and comprehensive regulations about the design of hotels and motels. But, as importantly, Congress recognized that the physical accessibility of a hotel or motel means little if the 61 million adults living in America with disabilities are unable to determine which hotels/motels are accessible and to reserve them. Thus, there is a legal mandate to provide a certain level of information to disabled travelers.

10. But despite the rules and regulations regarding reservation procedures, a 2019 industry article noted that: "the hospitality sector has largely overlooked the importance of promoting accessible features to travelers."

11. These issues are of paramount important. Persons with severe disabilities have modified their own residences to accommodate their unique needs and to ameliorate their physical limitations. But persons with disabilities

3

are never more vulnerable than when leaving their own residences and having to travel and stay at unknown places of lodging. They must be able to ascertain whether those places work for them.

**FACTUAL ALLEGATIONS:**

12. Due to plaintiff's disability, he is unable to, or seriously challenged in his ability to, stand, ambulate, reach objects mounted at heights above his shoulders, transfer from his chair to other equipment, and maneuver around fixed objects.

13. Thus, Plaintiff needs an accessible guestroom and he needs to be given information about accessible features in hotel rooms so that he can confidently book those rooms and travel independently and safely.

14. Plaintiff planned on making a trip in November of 2020 to San Diego. He had tremendous difficulty in finding a hotel that provided enough information about accessibility features that would permit him to independently assess whether the rooms worked for him.

15. Plaintiff felt that the San Diego Mission Bay Resort would work well for him due to its desirable location price point

16. Thus, on or about October 3, 2020, plaintiff went to the San Diego Mission Bay Resort website at https:/www.missionbayresort.com/ seeking to book an accessible room at the hotel.

17. This website reservation site is either maintained and operated by the defendant or is run by a third party on the defendant's behalf. It is the official online reservation system for this hotel.

18. Plaintiff first found that there was no information about the accessibility of any part or portion of the hotel other than the individual guestrooms. Here, with few exceptions, the hotel merely made a list of every public space throughout the hotel and slapped the label "accessible" on it:

First Amended Complaint                           3:20-cv-02370-DMS-MDD

## The following areas are accessible

- Entrance to lobby is on ground floor, there are no stairs at the entrance
- Ramp entrance to Covewood
- Ramp to marina slips
- Ramp to Solrisa
- Ramp entrance to pool
- ADA compliant pool and spa lift
- Banquet/meeting are on ground floor
- Elevator in Spa Brezza to access treatment rooms
- Accessible business center
- Accessible concierge desk
- Accessible elevators
- Accessible exercise facility
- Accessible meeting space
- Accessible public entrance
- Accessible registration desk
- Accessible restaurant
- Accessible restrooms
- Accessible guest rooms
- Accessible swimming pool
- Braille elevator
- Closed captioning on televisions or closed captioning decoders
- Digital alarm clock available with sound, strobe light or vibrating pad
- Lowered buttons in elevators
- Lowered emergency evacuation instructions
- Parking area
- Route from the hotel's public entrance to all areas where food and beverages are sold
- Route from the hotel's public entrance to the accessible guestrooms
- Route from the hotel's public entrance to the elevators area
- Route from the hotel's public entrance to the meeting room/ballroom area
- Route from the hotel's public entrance to the registration area
- Route from the hotel's public entrance to the swimming pool
- Service support animals welcome
- Strobe alarms
- TTY capabilities
- Vibrating fire alarm available
- Visual alarms for hearing impaired in hallways & public areas
- Hotel employees will read menus and other printed/visual information to guests who are blind/low vision

First Amended Complaint                    3:20-cv-02370-DMS-MDD

19. But just about *every* hotel has a entrances, public routes, elevators, check-in desks, exercise facilities, restrooms, restaurants, and parking. business centers, fitness centers, a registration desk and a restaurant or lounge. Here, all the hotel did was slap the label "accessible" on all of its public spaces.

20. Claiming something is "accessible" is a conclusion or opinion. Persons with disabilities do not have to rely upon the naked judgment or conclusions of the hotel. The ADA specifically mandates that hotels must provide specific information to persons booking their rooms. Under the ADA, the hotel must not only identify but "*describe* accessible features *in the hotels* and guest rooms offered through its reservations service *in enough detail* to reasonably permit individuals with disabilities to *assess independently* whether a *given* hotel or guest room meets *his or her* accessibility needs." 28 C.F.R. 36.302(e)(1)(ii) (emphasis added to key words). Here, plaintiff has been denied the right.

21. The notable exceptions on this list is the identification of a lift at the pool and spa. This is helpful information. The rest provides not data or information that would permit any wheelchair user to conduct an independent assessment.

22. As for the guestroom itself, Plaintiff found that the hotel offered a "TWO QUEENS GUESTROOM ADA" with a roll-in shower, which was the room type that plaintiff was looking for.

23. However, the hotel provided scant details about the accessible features inside the guestroom and some of the details demonstrated a lack of knowledge about what constitutes accessibility.

24. The entirety of the reservation's website's information about the accessibility of this hotel room (in addition to photos that may or may not be representative of the actual room) is pasted here:

First Amended Complaint                           3:20-cv-02370-DMS-MDD

## Information about our accessible guest rooms

Rooms designated as mobility accessible have features for guests with mobility disabilities, including, but not limited to:

- Roll-in shower or tub with grab bars
- Lowered light switches and thermostats
- Grab bars in bathroom
- Toilets with grab bars
- Accessible vanity
- Accessible routes to all parts of the room
- Roll-in showers
- Accessible guest rooms with mobility features with entry or passage doors that provide 32″ of clear width
- Bathroom doors at least 32 inches wide
- Bedroom doors at least 32 inches wide (812mm)

25. Some of this information is helpful. The fact that the roll-in shower has grab bars, that the toilet has grab bars, and that the doors are 32 inches in width are critical pieces of information and precisely the sort of things that wheelchair users need to know. Instead of merely saying "accessible door," the hotel provided the pertinent detail, i.e., 32 inches of clearance. But the hotel simply does not cover all the critical areas.

26. Plaintiff, like any wheelchair user, simply needs to know some basic information (actual data, not adjectives) about the core features so that he can independently assess whether the hotel room works for him. Those core features for the guestroom itself are simply: (1) entrances; (2) maneuvering space at bed; (3) toilet; (4) sink; and (5) bath/shower. That's it. Five critical areas in the guestroom. Plaintiff does not need an exhaustive list of accessibility features. Plaintiff does not need an accessibility survey to determine of a room works for him. Plaintiff, like the vast majority of wheelchair users, simply needs these handful of areas to be described in enough detail to permit him to independently assess that the room works for him and that he can book with confidence.

First Amended Complaint                    3:20-cv-02370-DMS-MDD

27. The hotel sufficiently described the doorway entrances. But fell short of the other four areas. The level of information that plaintiff needs to confidently book his hotel room is as follows.

- For the beds themselves, the only thing plaintiff needs to know (and the only thing regulated by the ADA Standards) is whether he can actually get to (and into) the bed, i.e., that there is at least 30 inches width on the side of the bed so his wheelchair can pull up next to the bed for transfer. This is critical information because plaintiff needs to pull his wheelchair alongside the bed. Here, the website says nothing.

- For the restroom toilet, plaintiff only needs to know two things that determine if he can transfer to and use the toilet; (1) that the toilet seat height is between 17-19 inches (as required by the ADA Standards) and (2) that it has the two required grab bars to facilitate transfer. The website identifies the grab bars but provides no information about the height of the toilet. And this is critical. Plaintiff only has the use of one hand and transferring from wheelchair to toilet is difficulty and dangerous for him. He needs information abut the height of the toilet.

- For the restroom sink, the two things that will determine whether plaintiff can use the sink from his wheelchair: (1) can he safely get his knees under the toilet? To wit: does the sink provide the knee clearance (27 inches high, 30 inches wide, 17 inches deep) and is any plumbing under the sink wrapped with insulation to protect against burning contact?  The second thing is whether the lavatory mirror is mounted at a height so that wheelchair users can sue it. A simple statement like: "the lavatory sink provides knee clearance of at least 30 inches wide, 27 inches tall and 17 inches deep, all of the under-sink plumbing is wrapped, and the lowest reflective edge of the mirror is no more than 40 inches high." But, here, not only does the hotel website say nothing

8

about the sink, the photo shows partially exposed plumbing, a mirror that looks clearly too high, and an indication that there may not be the required knee clearance under the sink. But, again, there is no description or details provided about this sink.



- Finally, for the roll-in shower, plaintiff needs to know only a couple of things: (1) whether it has a an in-shower seat (and if so, whether can fold

First Amended Complaint                                   3:20-cv-02370-DMS-MDD

1   out of the way); (2) that there are grab bars mounted on the walls; (3) that
2   there is a detachable hand-held shower wand for washing himself and
3   (4) that the wall mounted accessories and equipment are all within 48
4   inches height. On this score, the hotel website says nothing more than
5   "roll-in shower with grab bars" but it does provide some photos that
6   show more information (assuming they are representative photos) but
7   also depict a fixed (non-foldable shower seat) which would violate
8   section 608.4 of the ADA Standards. So, the plaintiff is left with
9   uncertainties about the accessibility of this shower.

10      28. This small list of items are the bare necessities that plaintiff must know
11  to make an independent assessment of whether the "accessible" hotel room
12  works for him. These things comprise the basics of what information is
13  reasonably necessary for plaintiff (or any wheelchair user) to assess
14  independently whether a given hotel or guest room meets his or her
15  accessibility needs.

16      29. Other accessibility requirements such as slopes of surfaces, whether the
17  hand-held shower wand has a non-positive shut off valve, the temperature
18  regulator, the tensile strength and rotational design of grab bars, and so many
19  more technical requirements under the ADA are beyond what is a *reasonable*
20  level of detail and plaintiff does not expect or demand that such information is
21  provided.

22      30. But because the defendant has failed to identify and describe—and/or
23  failed to provide the necessary information to the third party operator of the
24  website reservation system—the core accessibility features in enough detail to
25  reasonably permit individuals with disabilities to *assess independently* whether
26  a given hotel or guest room meets his accessibility needs, the defendant fails
27  to comply with its ADA obligations and the result is that the plaintiff is unable
28  to engage in an online booking of the hotel room with any confidence or

First Amended Complaint                                    3:20-cv-02370-DMS-MDD

knowledge about whether the room will actually work for him due to his disability.

31. This lack of information created difficulty for the plaintiff and the idea of trying to book this room -- essentially ignorant about its accessibility -- caused difficulty and discomfort for the Plaintiff and deterred him from booking a room at the San Diego Mission Bay Resort.

32. Plaintiff lives in Los Angeles but travels to San Diego on a consistent and regular basis for a variety of reasons, primary among them is his work as an ADA tester. Plaintiff frequents businesses to determine if they have complied with the anti-discrimination mandates of the ADA. Plaintiff will continue his work as an ADA tester into the foreseeable future and will be travelling regularly to the San Diego area.

33. Assuming that COVID doesn't continue to be an issue, the plaintiff is planning on making the trip sometime between June and July of 2021.

34. As a veteran ADA tester, Plaintiff is aware that he needs to return to the hotel website and to patronize the hotel in order to have standing to see that the hotel comes into compliance with the ADA's mandate regarding its reservation policies. Thus, plaintiff will use the hotel's website reservation system to book a room and travel to the San Diego Mission Bay Resort when it has been represented to him that the hotel's website reservation system is accessible. Plaintiff will be discriminated against again, i.e., be denied his lawfully entitled access, unless and until the defendant is complies with the law.

35. Plaintiff would like to patronize this hotel but is deterred from doing so because of the lack of detailed information through the hotel's reservation system.

36. Plaintiff has reason and motivation to use the defendant's hotel reservation and to stay at the defendant's hotel in the future. Among his

11

reasons and motivations are to assess these policies and facilities for compliance with the ADA and to see his lawsuit through to successful conclusion that will redound to the benefit of himself and all other similarly situated as well as the fact that plaintiff finds this hotel to be centrally located to many of the places he intends to visit.

37. Plaintiff routinely revisits and uses the facilities and accommodations of places he has sued to confirm compliance and to enjoy standing to effectuate the relief promised by the ADA.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

38. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

39. Under the ADA, it is an act of discrimination to fail to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges advantages or accommodations to person with disabilities unless the entity can demonstrate that taking such steps would fundamentally alter the nature of those goods, services, facilities, privileges advantages or accommodations. See 42 U.S.C. § 12182(B)(2)(A)(ii).

40. Specifically, with respect to reservations by places of lodging, a defendant must ensure that its reservation system, including reservations made by "any means," including by third parties, shall:

        a. Ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not

First Amended Complaint            3:20-cv-02370-DMS-MDD

1    need accessible rooms;

2    b.  Identify and describe accessible features in the hotels and
3        guest rooms offered through its reservations service in
4        enough detail to reasonably permit individuals with
5        disabilities to assess independently whether a given hotel
6        or guest room meets his or her accessibility needs; and

7    c.  Reserve, upon request, accessible guest rooms or specific
8        types of guest rooms and ensure that the guest rooms
9        requested are blocked and removed from all reservations
10       systems.

11   *See* 28 C.F.R. § 36.302(e).

12   41. Here, the defendant failed to modify its reservation policies and
13   procedures to ensure that it identified and described accessible features in the
14   hotels and guest rooms in enough detail to reasonably permit individuals with
15   disabilities to assess independently whether a given hotel or guest room meets
16   his or her accessibility needs and failed to ensure that individuals with
17   disabilities can make reservations for accessible guest rooms during the same
18   hours and in the same manner as individuals who do not need accessible
19   rooms.

20

21   **II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL**
22   **RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ.
23   Code § 51-53.)

24   42. Plaintiff repleads and incorporates by reference, as if fully set forth
25   again herein, the allegations contained in all prior paragraphs of this
26   complaint.  The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia,
27   that persons with disabilities are entitled to full and equal accommodations,
28   advantages, facilities, privileges, or services in all business establishment of

First Amended Complaint                        3:20-cv-02370-DMS-MDD

every kind whatsoever within the jurisdiction of the State of California.  Cal. Civ. Code §51(b).

43. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act.  Cal. Civ. Code, § 51(f).

44. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, failing to comply with the ADA with respect to its reservation policies and practices.

45. Because the violation of the Unruh Civil Rights Act resulted in difficulty and discomfort for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. See Civ. Code § 52(a).

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 for each offense.

First Amended Complaint                                    3:20-cv-02370-DMS-MDD

1       3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant

2  to 42 U.S.C. § 12205; and Cal. Civ. Code § 52(a).

3

4  Dated: January 7, 2021       CENTER FOR DISABILITY ACCESS

5

6                            By:   /s/ Russell Handy

7                            Russell Handy
                              Attorney for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28